UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALLIANCE FOR MULTILINGUAL
MULTICULTURAL EDUCATION, et al.,

        Plaintiffs,                        No. C 11-0215 PJH

    v.                                **ORDER TRANSFERRING CASE**

JORGE GARCIA, et al.,

        Defendants.
_____/

        Before the court is defendants' motion for an order dismissing the complaint in the above-entitled action for lack of personal jurisdiction and for improper venue.  Having read the parties' papers and carefully considered their arguments, the court hereby ORDERS that the case be transferred to the District of New Mexico, pursuant to 28 U.S.C. § 1406(a), for the reasons set forth below.

**BACKGROUND**

        Plaintiffs Alliance for Multilingual Multicultural Education ("NM AMME" – a New Mexico non-profit corporation), Alliance for Multilingual Multicultural Education ("FL AMME" – a Florida non-profit corporation), and Barbara Flores ("Flores" – a resident of San Bernardino, California, who claims to be the president of the boards of directors of NM AMME and FL AMME) filed the original complaint in this action on January 14, 2011.

        Named in the original complaint are defendants Jorge Garcia ("Garcia" – a resident of Colorado), Paul Martinez ("Martinez" – a resident of New Mexico), David Briseno ("Briseno" – a resident of New Mexico), and Elena Izquierdo ("Izquierdo" – a resident of Texas).  These four defendants are (or were) board members of NM AMME.

NM AMME was incorporated on March 18, 2009, and is or was affiliated with New Mexico Highlands University ("NMHU"). As of May 2010, its six-member board of directors included Flores (President), Martinez (Vice-President), Izquierdo (Secretary), Briseno (Treasurer), and two other individuals, Christine Sims and Quan Cao ("Cao").

Plaintiffs allege that Martinez, who is employed by NMHU, arranged for someone at NMHU to create artwork for the use of NM AMME, and "delivered certain globe marks to NM AMME and authorized NM AMME to use those marks."[1] First Amended Complaint ("FAC") ¶ 22. Subsequently, NM AMME began to use the marks. However, plaintiffs assert, Martinez did not own the "copyrights" to the marks, and failed to obtain permission for NM AMME to use the marks, thereby exposing NM AMME to liability. FAC ¶ 23.

NM AMME also allegedly began using the domain name www.ammeglobal.org to promote its "goods and services," including its annual conferences, starting in approximately June 2009. It has a website located at the domain name, and has allegedly used the marks in commerce, on its website and elsewhere. FAC ¶ 51.

Plaintiffs allege that Briseno, as Treasurer, was responsible for maintaining NM AMME's post office box, but that the box was closed by the Post Office because Briseno failed to pay the rental fee. FAC ¶ 28. Plaintiffs also claim that Briseno failed to obtain an employer identification number for NM AMME, and failed to submit the necessary paperwork to the New Mexico Secretary of State to maintain NM AMME in good standing; and that the Secretary of State issued a certificate of revocation revoking NM AMME four months after it had been established, and Briseno failed to so advise NM AMME, or to take steps to have NM AMME reinstated. FAC ¶¶ 29-30.

NM AMME held a conference for multilingual and multicultural education in May 2010. Briseno was responsible for handling the revenues and expenses for the conference, but plaintiffs assert that Briseno failed to pay the expenses, and failed to provide NM AMME with an accounting of the revenues and expenses. FAC ¶ 31-32.

---

[1] Plaintiffs refer to these marks as "the Subject Marks."

Plaintiffs allege that in June 2010, Martinez, Briseno, and Izquierdo failed to attend the scheduled NM AMME board meeting, and that on June 11, 2010, Briseno submitted his resignation from the board. Plaintiffs claim that after his resignation, Briseno failed to deliver NM AMME's remaining funds to NM AMME to deposit into its new bank account, and that he also commingled funds with those from the New Mexico Association for Bilingual Education, for which he serves as executive director. FAC ¶¶ 33-34.

Plaintiffs assert that in July 2010, NM AMME conducted an investigation into the 2010 AMME conference, and discovered that the revenues deposited by Briseno appeared to be substantially less than the revenue that should have been received according to the paid registration records. FAC ¶ 35.

At some point, Flores and Cao solicited and obtained a financial contribution from a private donor to NM AMME. Plaintiffs allege that NM AMME later discovered that Martinez and Izquierdo used their positions on the board of NM AMME to solicit, from that same donor, side payments for their personal benefit. FAC ¶ 36.

Plaintiffs assert that in July 2010, Martinez and Izquierdo failed to attend the scheduled NM AMME board meeting. Flores allegedly "admonished" them for having failed to attend the June and July board meetings, and requested that they attend the August 2010 board meeting. On July 28, 2010, Martinez resigned from the board. FAC ¶¶ 38-40.

The Council of Chief of State Schools allegedly invited NM AMME to co-convene a conference on Common Core Standards for Education, and a partnership proposal was submitted to the National Education Association. NM AMME allegedly held a strategic planning meeting in San Antonio, organized by Flores and Cao. According to plaintiffs, Flores and Cao were the only board members who attended. Izquierdo did not attend, and also did not attend the August 2010 board meeting. FAC ¶ 42.

Plaintiffs claim that it "appeared" that Izquierdo had withdrawn from the NM AMME board of directors. In August 2010, Christine Sims resigned from the NM AMME board. Thus, as of August 2010, according to plaintiffs, only Flores and Cao remained on the

board.  FAC ¶¶ 43-45.

Also in August 2010, Flores contacted the Secretary of State's office, and was allegedly informed that NM AMME "no longer existed."  Plaintiffs claim that Flores was unaware, and the Secretary of State's office did not inform her, that NM AMME could be reinstated upon the filing of certain documents and payment of fees/penalties.  FAC ¶ 46.

Plaintiffs allege that because NM AMME no longer had any board members in New Mexico, Flores and Cao decided to establish the organization in Florida, where Cao resides.  Thus, Flores and Cao formed FL AMME on August 31, 2010, and they continued with the planning for the 2011 AMME conference in Texas.  FAC ¶ 48.  In preparation for that conference, FL AMME entered into contracts with the San Antonio Convention Center and the Hilton Palacio del Rio Hotel, and continued developing and advertising the program for the conference.  FAC ¶ 49.

Plaintiffs allege that after defendants learned of Flores' and Cao's success in obtaining significant revenues for AMME, they "secretly" filed the documents necessary to reinstate NM AMME, and paid the fees and penalties required to reinstate it with the New Mexico Secretary of State.  FAC ¶ 50.

Plaintiffs also allege that on August 9, 2010, defendants "secretly registered" the domain name www.ammeglobe.com (which plaintiffs assert is "confusingly similar to" AMME's domain name, www.ammeglobal.org), and set up a website at that address claiming to be (just plain) AMME, and advertising the upcoming 2011 conference in Texas.  Defendants' domain name and website are allegedly hosted by DreamHost, which is located in Brea, California.  Plaintiffs claim that defendants' website unlawfully incorporates plaintiffs' marks, and also disparages plaintiffs by claiming that AMME's identity was "stolen" by plaintiffs, including Flores.  FAC ¶¶ 52-54.

On October 14, 2010, Briseno and Martinez allegedly notified Flores that they had decided to reinstate themselves on the NM AMME board of directors by rescinding their prior resignations.  Plaintiffs allege that Flores told Briseno and Martinez that the resignations had been accepted months earlier, and that they had no authority to

4

unilaterally reinstate themselves. FAC ¶¶ 55-56.

Plaintiffs assert that "defendants" now claim to be directors of NM AMME, and to have authority to act on behalf of NM AMME. Plaintiffs also allege that Martinez, Briseno and Izquierdo have attempted to add other individuals to the NM AMME board of directors, and that those individuals are also claiming to have authority to act on behalf of NM AMME. FAC ¶ 57.

Plaintiffs claim that defendants have repeatedly attempted to interfere with "AMME's" charitable activities, and that they advertised "their own" 2011 AMME conference on their website, in competition with plaintiffs' 2011 AMME conference – to be held in the same city and on the same dates.[2] Plaintiffs assert further that defendants' website advertised online registration for participants and listed several collaborating or co-sponsoring organizations that are or were collaborators or co-sponsors of plaintiffs' own 2011 AMME conference. FAC ¶¶ 64-65.

Plaintiffs allege that on October 20, 2010, defendants "secretly" filed articles of dissolution with the Florida Secretary of State, to dissolve FL AMME. Plaintiffs claim that they were forced to prepare and file Articles of Revocation of Dissolution in order to reverse defendants' wrongful actions, and to reinstate FL AMME. FAC ¶ 66.

Plaintiffs assert that the San Antonio Association for Bilingual Education ("SAABE") agreed to assist plaintiffs with their 2011 conference, but after defendants contacted SAABE and disparaged plaintiffs, SAABE withdrew its support for plaintiff's 2011 conference, and subsequently (according to plaintiffs) appeared to be supporting defendants' competing 2011 conference. FAC ¶ 67.

Plaintiffs claim that defendants have "secretly" redirected revenue intended for plaintiffs to their own 2011 conference, and have also attempted to collect AMME's (plaintiffs') grant monies. FAC ¶¶ 68-69.

---

[2] According to the flyer attached as Exh. C to the FAC, defendants' conference was scheduled for April 6-8, 2011, three months after plaintiffs filed the present complaint. Plaintiffs' AMME website says that their 2011 conference has been postponed to Fall 2011. It appears that defendants' conference went forward as scheduled in April 2011.

On November 4, 2010, Garcia allegedly wrote to the sales manager of plaintiffs' 2011 conference hotel – the Hilton Palacio del Rio – falsely claiming to be a member of the board of AMME (plaintiffs' AMME), and allegedly notifying the hotel that Flores was not authorized to contract with the hotel to provide accommodation for the 2011 AMME conference.  FAC ¶ 70.

Plaintiffs claim that on November 19, 2010, defendants attempted to prevent the hotel from communicating with plaintiffs; that on November 11, 2010, defendants contacted the organization managing the plaintiffs' 2011 conference, and disparaged Flores and threatened the organization with legal liability; that on November 13, 2010, defendants contacted two directors of FL AMME, disparaging Flores and threatening the directors with legal liability; that on November 14 and 15, 2010, defendants contacted AMME's webmaster, and threatened her with legal liability; that on November 19, 2010, defendants attempted to remove Flores and Cao from the NM AMME board.  FAC ¶¶ 71-77.

In the original complaint, plaintiffs alleged 16 causes of action, against Garcia, Martinez, Briseno, and Izquierdo:  (1) false advertising, misrepresentation, and unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125(a), et seq.; (2) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051, et seq.; (3) cyberpiracy, in violation of the Lanham Act, 15 U.S.C. § 1025(d), et seq.; (4) unfair competition, in violation of California Business & Professions Code § 17200); (5) false advertising, in violation of California Business & Professions Code § 17500); (6) trademark infringement, in violation of California Business & Professions Code § 14200); (7) cyberpiracy, in violation of California Business & Professions Code § 17525); (8) fraud; (9) tortious interference with contractual relations and prospective economic advantage, in violation of California Business & Professions Code § 17525); (10) defamation; (11) trade libel; (12) conversion; (13) imposition of a constructive trust; (14) unjust enrichment; (15) breach of director's duties to nonprofit corporations, under N.M.S.A. § 53-8-25.1); and (16) conspiracy.

On February 10, 2011, plaintiffs filed the FAC, which is largely identical to the original complaint, and which adds NMHU as a defendant, along with five individual

6

defendants, alleged to be members of the current AMME board (Manuel Ornelas, Sandra Liliana Pucci, Kathy Escamilla, Zaida Cintron, and Robin Farup-Romero). According to the Declaration of Barbara Flores, filed in opposition to the present motion, the newly-added defendants are residents of New Mexico, Texas, Illinois, Colorado, Oregon, or Wisconsin.

The clerk's docket for this action reflects that no summonses were issued for these new defendants, and that no proof of service has been filed. None of the new defendants has yet made an appearance in this action, and the court presumes they have not yet been served.

The court notes further that it is not clear which causes of action are being asserted by which plaintiffs against which defendants. Nor is it clear that Flores or FL AMME has standing to assert most of the 17 causes of action. For example, there are no facts alleged in the FAC showing that the marks belong to either Flores or to FL AMME. Thus, if they do not own the marks, Flores and FL AMME would likely not have standing to assert the trademark infringement or cyberpiracy claims, or the claim for declaratory relief.

Similarly, it is difficult to see how Flores could have standing to assert claims of unfair competition, false advertising, tortious interference, conversion, unjust enrichment, or breach of fiduciary duty, as any injury caused by any of those acts would have been injury to NM AMME or perhaps to FL AMME, but not to Flores.

In the fraud cause of action, plaintiffs allege that defendants made false representations to "government entities," concealed "from the public" the fact that Briseno and Martinez had resigned from the board, and falsely represented "to the public" that one or more plaintiffs stole AMME's identity. FAC ¶ 118. Nowhere do they allege that any defendant made any false representation of fact to plaintiffs. Thus, since plaintiffs allege no injury caused to them by defendants' misrepresentations, they appear to lack standing to assert the fraud claim.

On February 11, 2011, a day after plaintiffs filed the FAC, defendants Garcia, Martinez, Briseno, and Izquierdo filed the present motion for an order dismissing the initial complaint for lack of personal jurisdiction, and for improper venue.

**DISCUSSION**

A.  Legal Standards

Where both personal jurisdiction and venue are challenged, a court normally decides personal jurisdiction first, and then venue.  See Leroy v. Great Western United Corp., 443 U.S. 173, 180 (1979); see Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2010) § 4:36.  However, where there is "sound prudential justification" for doing so, the court can rule on the venue challenge first.  Leroy, 443 U.S. at 180-81.

Here, given the potential standing problems identified above, and the fact that the six new defendants have apparently not been served, and are thus subject to being dismissed pursuant to Federal Rule of Civil Procedure 4(m), the court finds sufficient prudential justification to warrant deciding the venue motion without deciding the personal jurisdiction motion.

Where venue is improper, a district court must either dismiss the case or transfer it "in the interest of justice" to an appropriate jurisdiction.  Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a); see also Jones v. GNC Franchising, Inc., 211 F.3d 495, 497 & n.4 (9th Cir. 2000).  The burden of establishing that venue is met rests with the plaintiff.  "The party that invokes the court's jurisdiction should have the burden of establishing both its jurisdiction and that it is a 'proper' forum."  Schwarzer, et al., § 9:136; see also Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979) (plaintiff bears burden of showing that venue is proper).

B   Defendants' Motion

Under the general venue statute, a civil action in which jurisdiction is not founded on diversity of citizenship may be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.  28 U.S.C. § 1391(b).

8

In the FAC, plaintiffs assert that venue is proper in this district under § 1391(b)(2) because "[a] substantial part of the events or omissions giving rise to these claims occurred in this district." FAC ¶ 5. Defendants contend, however, that venue is not proper, because a substantial part of the events or omissions alleged in the complaint did not occur in California, and even if some events or omissions occurred in California, they did not occur in the Northern District of California.

Defendants argue that because the two corporations involved in this case are based in, respectively, New Mexico and Florida, and because Garcia, Martinez, Briseno, and Izquierdo reside in and are domiciled in states other than California, and have no contacts with California, the "substantiality" requirement is not met because it would be unfair to hale Garcia, Martinez, Briseno, and Izquierdo into this remote district. Defendants also note that Flores, who does reside in California, does not reside in this district. Defendants assert further that there is no residual jurisdiction because there is another district in which the action may be brought – the District of New Mexico, where both personal jurisdiction and venue would be proper.

In opposition, plaintiffs argue that venue is proper in this district because defendants are operating an Internet website that is hosted by a California company, and that defendants' website solicits and accepts on-line reservations and payments from consumers in this venue. In addition, plaintiffs assert, defendants have contracted with Acteva, a San Francisco company, for the processing of on-line registrations solicited and received through their website. Plaintiffs claim that defendants' website "actually explicitly disparages [p]laintiffs in this venue," and that defendants' use of plaintiffs' "marks" on their website causes confusion to consumers in this venue. For these reasons, plaintiffs argue, venue is proper in this district.

To determine whether a substantial part of the events giving rise to the claim occurred in the forum, the court first considers what acts or omissions by the defendants give rise to the plaintiffs' claims. See Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005); Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1372 (11th Cir. 2003).

Here, the acts giving rise to the claims in this action, as set forth in the FAC, are as follows. Plaintiffs allege that defendants misrepresented and falsely advertised on their website that they represent NM AMME, or that "their" NM AMME is the true NM AMME, and that they made use of the marks belonging to plaintiffs; that defendants registered a domain name that is confusingly similar to plaintiffs' domain name or "the Subject Marks;" that defendants made false representations to government entities and to the public; that defendants interfered with the contractual relations between NM AMME and its "affiliates, partners, customers, suppliers, and the Public" and caused those third parties to sever their business relationships with NM AMME; that defendants defamed and libeled plaintiffs; that defendants wrongfully converted NM AMME's funds; that defendants wrongfully "reaped substantial profits from the monies belonging to" NM AMME; and that Martinez, Briseno, and Izquierdo breached the duties of good faith and loyalty that they owed to NM AMME under New Mexico law.

Once it has identified the alleged wrongful acts, the court must determine whether a substantial part of those acts took place in the forum. Daniel, 428 F.3d at 432; Jenkins Brick Co., 321 F.3d at 1372. Determining whether events in the forum are substantial for venue purposes is "more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." Daniel, 428 F.3d at 432-33. In addition, "[w]hen material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." Id.

Defendants all live in states other than California, the two plaintiff corporations are based in states other than California, and plaintiff Flores resides in the Central District of California, not the Northern District. The defendants' domain name server is also located in the Central District. Unlike personal jurisdiction, which depends on the defendant's contacts with the forum state, the test for venue is the defendant's contacts with the district where the suit was filed, or whether at least some of the events occurred in that district.

10

While it is true that § 1391(b) does not require that a majority of the events have occurred in the district where the suit is filed, and also does not require that the events in the district predominate, see Rodriguez v. California Highway Patrol, 89 F.Supp. 2d 1131, 1136 (N.D. Cal. 2000), the "events and omissions" that are considered are only those that directly give rise to the claim. See Schwarzer, et al., § 4:315 (citing Jenkins Brick, 321 F.3d at 1372). Moreover, "the substantiality of the operative events is determined by assessment of their ramifications for efficient conduct of the suit." Myers v. Bennett Law Offices, 238 F.3d 1068, 1075-76 (9th Cir. 2001) (citation and quotation omitted).

Plaintiffs have not established that any of the actions or omissions alleged in the FAC complaint occurred in this district. Rather, it appears that a substantial part of the events underlying plaintiffs' claims arose either in New Mexico or in Texas. Moreover, there is no dispute that none of the parties resides in this district. Accordingly, under the general venue statute, the Northern District of California is not the proper venue for this action.

The only contact with this district alleged by plaintiffs in their opposition to defendants' motion is the claim that defendants contracted with a San Francisco company, Acteva, to handle on-line registrations for their 2011 conference. However, the on-line processing of registrations for defendants' 2011 conference, held in Texas, is not mentioned in the FAC, and, more to the point, is not an action that directly gives rise to plaintiffs' claims in this action.

Under 28 U.S.C. § 1406, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Although defendants moved only to dismiss, the court has discretion under § 1406(a) to determine whether to dismiss or transfer. King v. Russell, 963 F.2d 1301, 1304 (9th Cir. 1992).

In this case, the court finds that a transfer would better serve the interests of justice, as normally dismissal of an action that could be brought elsewhere is "time consuming and

11

justice-defeating." Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962) (quotation and citation omitted). In addition, even if the claims were dismissed as to the moving defendants, dismissal would be without prejudice to filing in a proper venue, and the defendants who have not yet made an appearance would technically remain in the case.

Notwithstanding the numerous causes of action asserted by plaintiffs, the primary dispute underlying the entire action is the question of who has rights with respect to NM AMME. This is a matter of New Mexico law, and a matter with direct connections to the District of New Mexico. Accordingly, the court finds that this action should be transferred to the District of New Mexico.

## CONCLUSION

In accordance with the foregoing, the court construes the motion to dismiss for improper venue as a motion to dismiss or transfer for improper venue, and finds that this action should be TRANSFERRED to the District of New Mexico. The motion to dismiss for lack of personal jurisdiction is DENIED as moot.

The date for the hearing on defendants' motion, previously set for June 29, 2011, is VACATED.

**IT IS SO ORDERED.**

Dated: June 24, 2011

_____
PHYLLIS J. HAMILTON
United States District Judge